ANNIE G. BLAKE, Respondent, v. C. G. ALSWAGER, Appellant.

(— A.L.R. —, 215 N. W. 549.)

**Bankruptcy — Failure to schedule unliquidated claims.**

1. In bankruptcy proceedings failure to schedule unliquidated claims of a creditor does not exempt such claims from discharge in bankruptcy where the creditor has been scheduled as a creditor and received notice of the bankruptcy proceedings and of the time and place of meeting of the creditors.

**Bankruptcy — exempt property cannot be attached after discharge.**

2. Exempt property set aside to a bankrupt cannot be subjected by a creditor to a lien of attachment issued after the discharge in bankruptcy, in an attempt to collect on a claim from which the debtor is discharged in bankruptcy, even though the action on the claim is commenced before the discharge in bankruptcy.

Opinion filed September 27, 1927.

Bankruptcy, 7 C. J. § 640 p. 361 n. 16; § 641 p. 362 n. 20, 21; § 707 p. 397 n. 96; § 721 p. 403 n. 46; p. 404 n. 50.

Appeal from the County Court of Stutsman County, *McFarland*, J. Reversed.

*J. S. Carr*, for appellant.

Before a creditor can claim a lien under this statute he must comply with it and perfect his lien. It is only after being so perfected that

Annotation.— (1)   On effect of discharge in bankruptcy on claims omitted from schedule of debts, see annotation in 2 A.L.R. 1672; 3 R. C. L. 337.

the lien is protected by a court of bankruptcy or any other court. Re Franklin, 18 Am. Bankr. Rep. 218, 220, 151 Fed. 642.

*S. E. Ellsworth,* for respondent.

"The lien of an attachment is not dissolved by the bankruptcy of the attachment debtor, where the property attached is exempt as against the trustee in bankruptcy, but is not exempt from seizure for the debt upon which the attachment is based." Jewett Bros. v. Huffman, 14 N. D. 110, 103 N. W. 408.

"A discharge in bankruptcy leaves intact all liens except those specially stricken down by the bankruptcy act, the effect of a discharge being to release the personal liability only. Such discharge does not affect vested liens upon property acquired more than four months prior to the proceedings in bankruptcy, and the same may be enforced after the discharge is granted." John Leslie Paper Com. v. Wheeler, 23 N. D. 477, 137 N. W. 412.

"The discharge of a bankrupt is only personal to himself, and does not affect any lien, either by contract or by judicial proceedings, against property." Paxton v. Scott (Neb.) 92 N. W. 611.

BURR, J. Prior to August, 1926, the defendant was indebted to the plaintiff on two promissory notes and on claims for work, labor and services performed for him by the plaintiff. On August 4th, 1926 he filed his petition in bankruptcy, attaching thereto his schedule of assets and liabilities, and listed the plaintiff as a creditor; specifying as his debts to her the promissory notes, but saying nothing about the debts for labor and services. The defendant was duly adjudged a bankrupt and notice was issued to creditors; including the plaintiff who appeared and examined the defendant relative to her claims against him. On August 25, 1926, the entire assets of the defendant were set aside to him as exempt property. On August 30, 1926, the plaintiff commenced this action; but no attachment was issued at that time. On September 4, 1926, the defendant filed his petition praying for his discharge in bankruptcy. On September 8, 1926, the defendant served his answer and an order to show cause why proceedings should not be stayed in order to give the defendant an opportunity to file his discharge in bankruptcy in the event that he received such discharge. The trial court issued an order staying proceedings, and

on November 12, 1926, the defendant received his discharge in bankruptcy, and on November 16, 1926, served his supplemental answer setting up this discharge,—plaintiff admitting "due and personal service of the within supplemental answer."

On November 19, 1926, a warrant of attachment issued on the ground that the defendant had disposed and was disposing of his property and about to remove his property from the state with intent to cheat and defraud his creditors and hinder the collection of their debts. On November 23, 1926, the sheriff levied upon this exempt property which had been set aside to the defendant and held possession of it until after the determination of this case in the trial court. · The case was tried March 2, 1927, and at the trial defendant introduced in evidence exemplified copies of his discharge in bankruptcy. The record further shows that the various steps in the bankruptcy proceedings were presented to the court. The jury found in favor of the plaintiff in the sum of $320 and interest. On March 21, 1927, judgment was entered specifically limiting the scope to the property seized and making provision for its satisfaction out of the property with no personal judgment against the defendant. On April 9, 1927, this exempt property was sold, and upon the payment of the costs of the judgment, and of the sale, and the application of the remainder of the proceeds to the claim of the plaintiff the judgment was canceled.

At the close of the trial the defendant moved for judgment in his behalf and after the verdict of the jury moved for judgment notwithstanding the verdict. Both motions were denied and the defendant appeals.

It appears that though the record shows the discharge in bankruptcy was offered and received in evidence, the objection thereto being overruled, the trial court refused to consider it because no application had been made to the court for permission to amend the answer so as to set up this discharge in bankruptcy and the court had never granted permission to file the supplemental answer. In this respect it will be noticed that the supplemental answer was served upon the plaintiff, that due and personal service of the same was admitted, and that no motion was made to strike it from the files. The supplemental answer was therefore one of the pleadings.

The defendant specifies as errors of the trial court: the holding of

the court that plaintiff had a lien of attachment against this exempt property; and the refusal to grant defendant's motion for a directed verdict, or his motion for judgment notwithstanding the verdict.

The real issue presented to the court is: May the plaintiff, after she has received notice of defendant's adjudication in bankruptcy, and after she has been listed as a creditor and received notice to that effect, commence an action in the state court upon claims which were not listed; and, after the defendant has been discharged in bankruptcy from all the provable claims against his estate, by warrant of attachment seize his property exempt in bankruptcy and have said property sold in satisfaction of her claims?

The fact that in his schedule of creditors and liabilities the defendant listed the plaintiff as a creditor and some of her claims as liabilities, but did not list the claims sued upon, does not make them exempt from the bankruptcy proceedings. Having been listed as a creditor and received notice of bankruptcy as such creditor it was immaterial that some of her claims may not have been listed. The bankrupt may not have recognized such claims or known of them. She could have listed them herself. The situation might be different if she had no notice of the adjudication in bankruptcy, and no notice that she was listed as a creditor. In Kreitlein v. Ferger, 238 U. S. 21, 59 L. ed. 1184, 35 Sup. Ct. Rep. 85, the court shows (p. 1188) it is only where the creditor has no "notice or actual knowledge of the proceedings in bankruptcy" that the bankrupt is not released from debts not scheduled, quoting the statute.

Thus we have a case where, after an adjudication in bankruptcy, the plaintiff sues upon certain claims and after the defendant has been discharged from any personal liability on these claims and has received his discharge in bankruptcy, the plaintiff attempts to perfect a lien against the exempt property. It is conceded in this appeal that plaintiff's claims were for labor and services rendered and that therefore under the state law the defendant would have no exemption against such claims except absolute exemptions which are not involved. See § 7739, Comp. Laws 1913. Plaintiff claims that while the discharge in bankruptcy discharges the defendant from any personal liability on these claims, nevertheless if his exempt property would have been subject to the same under the state law, had there been no bank-

ruptcy proceedings, the setting aside of this property to him as exempt continued this liability so far as the property was concerned and that therefore she could attach such property and recover her claim to an extent not exceeding the value of the property attached.

Counsel for plaintiff gives an exhaustive analysis of the decisions of this court relative to actions against property of a bankrupt after his discharge in bankruptcy. There is no question but what these uniformly announce the same principle. In Powers Dry Goods Co. v. Nelson, 10 N. D. 580, 58 L.R.A. 770, 88 N. W. 703, the rule is laid down that "the lien of an attachment on personal property of a bankrupt is not destroyed by a mere discharge of the debt secured by the lien, through a discharge under the present national bankruptcy act; and, unless such lien is one which is itself declared void by said act, it may be enforced, through a modified form of judgment, as against the property on which the lien exists." In that case the attachment was issued before the adjudication in bankruptcy and the property attached was thereafter set aside to the defendant as exempt. Another attachment was issued later. The attachment was levied on the property in an attempt to recover the purchase price of the goods levied upon, hence there were no exemptions against such judgment so far as the property was concerned. The court held that while the subsequent discharge in bankruptcy rendered the debt "unenforceable as against the defense of discharge" yet the "lien was not discharged by the mere discharge of the debt." The court then proceeded to determine whether the lien was discharged. On page 586, the court says: "Exempt property constitutes no part of the estate which passes to the trustee for the benefit of creditors. . . . Exempt property . . . is left to the debtor, to be held by him subject to the laws of the state. . . . It seems clear the discharge in bankruptcy was without effect upon the lien *theretofore* created under the laws of this state upon property which was then subject exclusively to the jurisdiction of the state courts." The use of the word "theretofore" is significant. It is true a second attachment had been levied on the same property after the exempt property had been set aside but this was before the discharge in bankruptcy. In any event, the first attachment had not been quashed. Again in Jewett Bros. v. Huffman, 14 N. D. 110, 115, 103 N. W. 408, this court said: "The lien of the attachment remains in

force, notwithstanding the bankruptcy, upon so much of the property as is exempt from those proceedings." The holdings of subsequent cases sustain this view: where at the time of the adjudication in bankruptcy the attaching creditor has a lien upon property which is exempt from the bankruptcy proceedings such lien is not destroyed by the bankruptcy proceedings, and a judgment in the attachment case may be satisfied out of the property, to the extent of the property, provided that property is not exempt from the debt under the state law. One of the latest cases from this court on this point is Thompson Yards v. Richardson, 51 N. D. 242, 199 N. W. 863. Here the issue was whether there was a lien in existence before the discharge in bankruptcy. It was an action to enforce a chattel mortgage on a crop and the question was whether the chattel mortgage attached to the crop before discharge in bankruptcy. This court held that under the uniform holdings of this court and the statutes of this state the lien of the chattel mortgage related back to the time of the giving of the chattel mortgage, and as this was prior to the bankruptcy proceedings, the lien could be enforced even though no personal judgment could be obtained on the debt. This case is followed and approved in Union Nat. Bank v. Lenton, 54 N. D. 262, 209 N. W. 350.

The reason for such holding is set forth in De Walt v. Heeren, 50 N. D. 804, 197 N. W. 868. The court said: "The effect of a discharge in bankruptcy is to suspend the right of action for debt against the debtor personally; the discharge does not annul the original debt or liability; the remedy upon the debt and the legal, but not the moral, obligation to pay the same is at an end."

With these very clear rules in mind we are required to apply them to the facts in the case. In the case at bar we have a situation where "the remedy upon the debt . . . is at an end," before any attempt was made to secure a lien upon the property. At the time the attachment in this case was issued there was no remedy against the debt. It was gone. Hence there was nothing to support the attachment. This was but a part of the remedy to enforce collection of a debt already discharged in bankruptcy. In the case of Re Harrington from the United States district court for the northern district of New York and set forth in 29 Am. Bankr. Rep. 666, we have a case "where six days before bankrupt's adjudication a creditor had obtained a judg-

ment against him upon a debt provable in bankruptcy and from which a discharge would be a release, and after adjudication levied execution against the salary of the bankrupt," and had garnishment issued in aid of execution. He attempted to enforce the lien of garnishment which lien had been obtained *after* the adjudication. The court held: "Discharge, if granted, would relate back to the adjudication and release bankrupt from all liability on such debts as were provable and existed at that time." Thus the judgment for the debt was discharged and an order was granted enjoining "the enforcement of the garnishee execution." The salary sought to be garnished was not claimed as exempt property, but it was salary earned after the adjudication, and did not pass to the trustee. The property therefore was in the same relation to the creditor as is the property in this case, so far as the bankruptcy proceedings were concerned. It was property that did not belong to the trustee. 1 Collier, Bankr. 13th ed. 600, says: "The bankruptcy law does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but only to preserve and enforce a lien in existence at the date of the adjudication." To hold otherwise would be to permit suits to be commenced indefinitely, whenever any of the exempt property could be secured. It will be noted there was no lien of attachment when the debtor received his discharge in bankruptcy. The claim had not been reduced to a lien. In H. E. Westerman Lumber Co. v. Raschke, — Minn. —, 215 N. W. 197, 198, it is said: "The creditor's claim . . . must be reduced to a lien prior to the discharge or it is lost." This principle is set forth in the syllabus of the case. It follows therefore that the debt described in the complaint having been extinguished at the time of the discharge in bankruptcy, and before attachment was issued, there was no debt which could be sued upon and the remedy to enforce it was lost. Therefore the subsequent attempt to get a lien by attachment fails. The trial court should have granted the motion for judgment notwithstanding the verdict. The judgment must be reversed and judgment rendered for the defendant dismissing the case with costs to the defendant.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.