This is an action for conversion of grain, in which the plaintiff's claim is founded upon a chattel mortgage executed by one Wesslen on December 20, 1922. It appears that Wesslen was the owner of the land upon which the grain in controversy was raised and that, to secure an indebtedness to the plaintiff, he executed the mortgage in question covering his undivided one-half interest in the crops to be grown in 1923. Subsequently, in January, 1923, Wesslen became a party to a tripartite agreement, denominated a lease, whereby he leased the land described in the chattel mortgage to the second parties, Nelson and Sundell, and stipulated for a rental to be paid to a third party, the Farmers and Merchants Bank of Sheynne. The lease provided for the payment to the third party, as assignee of the first party, as rent "an amount equal to one half of the value of all crops raised upon said premises during the year 1923." There were further stipulations as to the method of determining the value and as to deductions for twine bill and hauling; also, a stipulation requiring the insurance of the crop against hail and providing that in the event of damage the parties of *Page 266 
the second part were to pay to the third party, as assignee of the first party, one half of the damages recovered as rental. The lease likewise contained a mortgage clause mortgaging the crop to the party of the third part, as assignee of the first party, as security for the rental and other payments. The lease was executed as a chattel mortgage and filed as such on the 31st day of March, 1923. The grain here involved was delivered to the defendant by Nelson, one of the second parties to the lease, in the fall of 1923. The following March demand was made upon the defendant by the plaintiff for one half of the grain or its proceeds. The demand was refused and this action resulted. A jury was waived and the cause was tried to the court. The trial court held the plaintiff's mortgage to be a first lien upon half of the crop raised by Wesslen's tenant in 1923 and gave the plaintiff a judgment for $473.75, with interest. From this judgment the defendant appeals and submits two main questions for the consideration of this court: (1) Whether under the undisputed evidence the owner of the land, Wesslen, ever had any interest in the 1923 crop to which the plaintiff's mortgage could and did attach: (2) Whether there was any competent evidence as to the value of the grain. The appellant principally relies, however, upon the answer to the first question. It is submitted that Wesslen never had any interest in the crop raised on the land in 1923 to which the plaintiff's mortgage could attach. We are of the opinion that this question must be answered adversely to the contentions of the appellant, for the reasons advanced in the case of Thompson Yards v. Richardson, 51 N.D. 241, 199 N.W. 863, followed in Union Nat. Bank v. Lenton ante, 262, 209 N.W. 350. In these cases a chattel mortgage of a crop next maturing (Comp. Laws 1913, § 6707), executed by the owner of the land, was held to operate in the present. The lien was held not to be defeated by the bankruptcy of the mortgagor prior to the maturity of the crop. Since, under the rule of these cases, an owner of land may make a valid grant by way of mortgage in præsenti of the crop next maturing, or of any fractional interest therein, it follows that any tenancy thereafter created between such owner and one having either actual or constructive notice cannot operate to defeat the mortgage. Stated another way, an owner of land, who has executed a valid chattel mortgage upon the next maturing crop, can not defeat the same by a *Page 267 
subsequent arrangement whereby a lessee with notice is to raise the crop, paying a cash rental.
It is argued, however, that the lien of the mortgage does not attach until the crop comes into existence through the agency ofthe mortgagor (Donovan v. St. Anthony D. Elevator Co. 7 N.D. 513, 66 Am. St. Rep. 674, 75 N.W. 809), and that, under the terms of the tenancy subsequently created, the lessee was in no sense acting for the mortgagor and that he became the owner of the entire crop in his own right. Minneapolis Iron Store Co. v. Branum, 36 N.D. 355, L.R.A. 1917E, 298, 162 N.W. 543. While it may be true that before the next maturing crop is planted the owner of the land has no property interest therein (Donovan v. St. Anthony D. Elevator Co. supra, page 519 [66 Am. St. Rep. 674, 75 N.W. 809]), it does not follow that his present mortgage is a mere executory contract to mortgage, nor that a subsequent arrangement for the production of a crop, which is dependent upon his grant or assent, is not a production through his agency. He was the owner of the land, and at the time of the mortgage and subsequently he had full power to control the possession and dictate the terms of occupancy by others.
We have examined the specifications of error with reference to the question of the proof of market value in connection with all of the evidence bearing thereon. We think the evidence clearly sufficient to support the finding of the trial court in this regard. The evidence is based upon card prices which prevailed in a nearby market, with which the witness was familiar, supplemented by his testimony as to the variation between such nearby market and the price at Bremen where the conversion took place. Farmers State Bank v. Jeske, 50 N.D. 813, 197 N.W. 854. It follows from what has been said that the judgment must be affirmed. It is so ordered.
CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur. *Page 268